**Vicki STOKES, Diane Fabiano, Jean Greendyke, Plaintiffs,**

v.

**SAGA INTERNATIONAL HOLIDAYS, LTD., Saga International Holidays Travel, Inc., Saga Holidays Ltd., Defendants.**

**No. CIV.A.02–11075–RBC [1].**

United States District Court, D. Massachusetts.

Oct. 21, 2003.

---

1. Perhaps they take their name from the sign on President Truman's desk: "The buck stops here."

1. With the parties' consent, this case was referred and reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

Beth L. Appelbaum, Nixon Peabody LLP, San Francisco, CA, Mark H. Burak, Nixon Peabody, LLP, Boston, MA, Paul J. Hall, Nixon Peabody LLP, San Francisco, CA, Minh Hoang, Nixon Peabody LLP, San Francisco, CA, Eric K. Larson, Nixon Peabody LLP, San Francisco, CA, Timothy J. Lucey, Nixon Peabody LLP, San Francisco, CA, Donna Y. Porter, Nixon Peabody, LLP, Boston, MA, Robert M. Shea, Nixon Peabody, LLP, Boston, MA, for Defendants.

John P. Connelly, Peabody & Arnold LLP, Boston, MA, for Plaintiffs.

***MEMORANDUM AND ORDER ON MO-
TION OF DEFENDANTS TO DIS-
MISS PLAINTIFFS' CALIFORNIA
BUSINESS & PROFESSIONS § 17200
CLAIM FOR FAILURE TO STATE A
CLAIM (RULE 12(B)(6)) (filed
12/17/01)***

COLLINGS, United States Magistrate Judge.

## I. Introduction

On November 20, 2001, plaintiffs Vicki Stokes (hereinafter "Stokes"), Diane Fabiano (hereinafter "Fabiano"), and Jean Greendyke (hereinafter "Greendyke") (hereinafter collectively "the plaintiffs") filed an amended complaint in the United States District Court for the Northern District of California against defendants Saga International Holidays, Ltd., Saga International Holiday Travel, Inc. (hereinafter collectively "Saga–USA"), and Saga Holidays, Ltd. (hereinafter "Saga–UK") (hereinafter collectively "the defendants"). In the amended three-count complaint, the plaintiffs assert violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq., (hereinafter "FLSA") (Count I), the California Labor Code §§ 201–203, 226, 510 and Industrial Welfare Commission Orders (hereinafter "California Labor Code") (Count II), and the California Business & Professions Code § 17200, i.e., Unfair Competition Law (hereinafter "the UCL" or "section 17200") (Count III). On December 17, 2001, the defendants filed motions to dismiss the plaintiffs' FLSA and California Labor Code claims pursuant to Rule 12(b)(2), Fed.R.Civ.P., for lack of personal jurisdiction and to transfer venue pursuant to 28 U.S.C. § 1404(a). The defendants also filed a motion to dismiss the plaintiffs' UCL claim pursuant to Rule 12(b)(6), Fed. R. Civ P., together with a memorandum of law in support thereof.

On May 22, 2002, the United States District Court for the Northern District of California granted the defendants' motion to transfer the case to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a). On October 24, 2002, Fabiano dismissed her claims asserted in this action without prejudice pursuant to Rule 41(a)(1)(i), Fed. R.Civ.P.

After certain issues with respect to motions for admission *pro hac vice* and the addition of plaintiffs were resolved, on May 23, 2003, the plaintiffs filed a memorandum opposing the motion to dismiss the UCL claim. On June 13, 2003, the defendants filed a reply brief in support of the motion to dismiss the section 17200 claim. At this juncture, the motion to dismiss Count III of the amended complaint is in posture for resolution.

## II. Facts

According to the allegations in the amended complaint, Saga–USA and Saga–UK are

engaged in the business of organizing, selling, and operating tours for the public. (Amended Complaint ¶ 2) As part of their "resort and stay holidays" program (hereinafter "stay program"), the defendants provide tours as well as accommodations to tourists in conjunction with customers visiting a given area. (Amended Complaint ¶ 2)

It is alleged that defendants Saga–USA are American corporations while Saga–UK is an affiliated, British entity. (Amended Complaint ¶¶ 2,3) The plaintiffs assert that the three defendants are all involved in stay programs or tours that take place at least in part in the United States.[2] (Amended Complaint ¶ 3) Saga–USA and Saga–UK hire "Tour Directors" as employees to escort tours and/or assist in the stay programs as "Stay Representatives." (Amended Complaint ¶ 2) Stokes and Greendyke, both California residents, were employed by Saga–USA as Tour Directors. (Amended Complaint ¶ 2)

In their amended complaint, the plaintiffs contend that the defendants have "wrongly refused to pay [them] and other of its former and present tour guides it employed minimum wages and overtime pay, as required under federal and California law." (Amended Complaint ¶ 2) Plaintiffs, for themselves and other Tour Directors, seek unpaid overtime pay and minimum wages, related penalties, punitive/exemplary damages, injunctive relief, and attorneys' fees under one or more of the following theories: the FLSA, the California Labor Code, or the UCL. (Amended Complaint, Prayer for Relief) Moreover, Stokes and Greendyke specifically request that the defendants be ordered to "make restitution and disgorgement of said ill-gotten gains" pursuant to the UCL claim. (Amended Complaint ¶ 39)

### III. Discussion

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The standard applicable when

resolving this motion has recently been reiterated by the First Circuit: It is a familiar principle that a complaint should be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The factual allegations of the complaint are to be accepted as true, and all reasonable inferences that might be drawn from them are indulged in favor of the pleader. *See Kiely v. Raytheon Co.,* 105 F.3d 734, 735 (1st Cir. 1997)(per curiam); *Garita Hotel L.P. v. Ponce Fed. Bank, F.S.B.,* 958 F.2d 15, 17 (1st Cir.1992).

*Gorski v. New Hampshire Dept. of Corrections,* 290 F.3d 466, 473 (1 Cir., 2002).

The California Business and Professions Code § 17200, unfair competition and prohibited activities, provides:

As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

The unfair competition statutes permit suit to be brought by "any board, ... or by any person acting for the interests of itself, its members or the general public" commenced within four years after the cause of action accrued. California Business and Professions Code, §§ 17204, 17208; *see Dean Witter Reynolds, Inc. v. Superior Court,* 211 Cal.App.3d 758, 773, 259 Cal.Rptr. 789 (1989); *Cortez v. Purolator Air Filtration Products Company,* 23 Cal.4th 163, 178, 96 Cal.Rptr.2d 518, 999 P.2d 706 (2000). The Code further provides that the Court

may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice

---

**2.** The plaintiffs are suing Saga–UK on a joint employer/alter ego theory based on the allegation that Saga–UK owns Saga–USA. (Amended Complaint ¶ 16)

which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

California Business and Professions Code, § 17203.

In drafting the statute, the Legislature deliberately traded the attributes of tort law for speed and administrative simplicity. *Prata v. The Superior Court of Los Angeles County,* 91 Cal.App.4th 1128, 1136, 111 Cal. Rptr.2d 296 (2001). It was the intent of the Legislature that "sweeping language" include " 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " *Barquis v. Merchants Collection Ass'n,* 7 Cal.3d 94, 111, 113, 101 Cal.Rptr. 745, 496 P.2d 817 (1972) (quoting Unlawful Agricultural Working Conditions as Nuisance or Unfair Competition, 19 Hastings L.J. 398, 408–409 (1968)). Considering the importance of deterring future violations of unfair business practices, the Legislature authorized courts to order restitution and foreclose retention by the violator of ill-gotten gains. *Prata,* 91 Cal.App.4th at 1136, 111 Cal.Rptr.2d 296 (*quoting Committee on Children's Television Inc. v. General Foods Corp.,* 35 Cal.3d 197, 211, 197 Cal.Rptr. 783, 673 P.2d 660 (1983)); *Fletcher v. Security Pacific National Bank,* 23 Cal.3d 442, 449, 153 Cal.Rptr. 28, 591 P.2d 51 (1979)(interpreting the nearly identical language of section 17535).

California courts have consistently interpreted the language of section 17200 broadly because it is not confined to anticompetitive practices, but is also directed toward the public's right to protection from fraud, deceit, and unlawful conduct. *Prata,* 91 Cal. App.4th at 1136, 111 Cal.Rptr.2d 296. As a consequence, one need not plead and prove the elements of a tort, but only show that " 'members of the public are likely to be deceived.' " *Prata,* 91 Cal.App.4th at 1136, 111 Cal.Rptr.2d 296 (*quoting Chern v. Bank of America,* 15 Cal.3d 866, 876, 127 Cal.Rptr. 110, 544 P.2d 1310 (1976)); see also *Committee on Children's Television Inc.,* 35 Cal.3d at 211, 197 Cal.Rptr. 783, 673 P.2d 660; *Bank of the West v. The Superior Court of Contra Costa County,* 2 Cal.4th 1254, 1266–1267, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992).

Against this background, the defendants argue that Count III of the amended complaint, the UCL claim brought in a representative capacity and not on behalf of a class, should be dismissed as unconstitutional in that it violates the due process rights of the defendants and the non-parties on whose behalf the claim is purportedly asserted in violation of both the United States and California Constitutions. In the defendants' view, the private enforcement of the UCL violates the due process rights of non-participating members of the general public whom the plaintiffs purport to represent by not requiring that these non-participating parties get notice of the proceedings and the opportunity to opt-out. Further, since adjudication would not be on behalf of any defined class, the defendants argue that win or lose, they remain open to the possibility of duplicative lawsuits for which there is no res judicata protection.

The defendants rely on *Bronco Wine Company v. Frank A. Logoluso Farms,* 214 Cal. App.3d 699, 262 Cal.Rptr. 899 (1989), a case in which the Court declined to allow the plaintiffs to maintain a representative UCL action on the grounds that due process concerns were implicated.[3] In that case a grape grower sued a winery operator on behalf of himself and twenty-seven similarly situated growers for breach of contract under section 17200. Finding for the grower on both causes of action, the trial court awarded restitution under section 17200 to the plaintiff and the twenty-seven nonparty growers. The Court of Appeal, distinguishing *Fletcher v. Security Pacific National Bank,* 23 Cal.3d 442, 153 Cal.Rptr. 28, 591 P.2d 51 (1979) and *Dean Witter Reynolds, Inc. v. Superior Court,* 211 Cal.App.3d 758, 259 Cal.Rptr. 789

---

3. Cases that have interpreted the *Fletcher* standard, i.e., deterring future violations and foreclosing retention by the violator of ill-gotten gains, create a spectrum of factual scenarios for which plaintiffs have attempted to bring uncertified class actions. *See Lazar v. Trans Union LLC,* 195 F.R.D. 665, 673 (C.D.Cal., 2000).

(1989), two prior cases standing for the proposition that an individual representative action under section 17200 can be maintained, reversed the restitution to the nonparty growers. Justice Baxter, writing for the majority, noted that "the procedure utilized with regard to the nonparty growers raises serious fundamental due process considerations." *Bronco Wine Company*, 214 Cal.App.3d at 717, 262 Cal.Rptr. 899. Concluding that due process was denied because the nonjoined parties were not given notice of the proceedings or an opportunity to be heard, the Court remarked that "without jurisdiction over the parties, an in personam judgment is invalid." *Bronco Wine Company*, 214 Cal.App.3d at 717, 262 Cal.Rptr. 899. The Court further identified 50 years of case law in which California has "recognized that a judgment may not be entered either for or against one who is not party to an action or proceeding." *Bronco Wine Company*, 214 Cal.App.3d at 717, 262 Cal.Rptr. 899. Noting that an individual action may eliminate the potentially significant expense of pretrial certification and notice, and thus may frequently be a preferable procedure to a class action, the Court instructed that a trial court must carefully weigh both the advantages and disadvantages of an individual action against the burdens and benefits of a class proceeding for the underlying suit. *Bronco Wine Company*, 214 Cal.App.3d at 719, 262 Cal.Rptr. 899.

The defendants further rely on language in *Kraus v. Trinity Management Services, Inc.*, 23 Cal.4th 116, 138, 96 Cal.Rptr.2d 485, 999 P.2d 718 (2000), a more recent case decided by Justice Baxter following his elevation to the California Supreme Court. Recognizing that a court has discretion in determining whether a "representative" UCL claim may proceed, Justice Baxter wrote:

> [B]ecause a UCL action is one in equity, the court may decline to entertain the action as a representative suit if the defendant can demonstrate a potential for harm

or show that the action is not one brought by a competent plaintiff for the benefit of injured parties.

*Kraus*, 23 Cal.4th at 138, 96 Cal.Rptr.2d 485, 999 P.2d 718 (quoting *Fletcher*, 23 Cal.3d. at 454, 153 Cal.Rptr. 28, 591 P.2d 51).

The plaintiffs take the position that participants in a representative action under the UCL may obtain an order of the court for restitution of unpaid overtime wages to other Tour Directors who are not named parties and that the due process concerns raised by the defendants may be resolved through a "receipt and release" procedure. Because the defendants cannot demonstrate that the UCL is not susceptible to a constitutional application that resolves their due process concerns, the plaintiffs argue that the motion to dismiss must be denied.

Stokes and Greendyke note that *Kraus* and its companion case, *Cortez v. Purolator Air Filtration Products Company*, 23 Cal.4th 163, 96 Cal.Rptr.2d 518, 999 P.2d 706 (2000), both cases in which the circumstances of the individuals in the proposed class were very similar, held that UCL actions may be brought on behalf of the general public without due process implications. In *Kraus*, the defendant property owner collected a nonrefundable tenant initiation expense reimbursement (TIER) fee in the amount of $100 from each member of the uncertified class of tenants. Each member of the plaintiff class sought to recover this $100, asserting that the collection of TIER fees was an unfair business practice that violated the UCL. *Kraus*, 23 Cal.4th at 122, 96 Cal.Rptr.2d 485, 999 P.2d 718. The Court held that section 17203 does not authorize orders for disgorgement into a fluid recovery fund[4] when the action has not been certified as a class action. Observing that allowing fluid recovery in representative UCL actions might implicate the due process concerns raised by the defendants and observed by the Court of Appeals in *Bronco Wine*, it found no due process problem in a representative action seeking

---

4. The implementation of fluid recovery involves three steps. First, the defendant's total damage liability is paid over to a class fund. Next, individual class members are allowed an opportunity to prove their particular damages in order to collect their individual shares. Third, any balance remaining after the individual claims have been paid is distributed by one of the various procedures that have been developed by the courts. *Kraus*, 23 Cal.4th at 127, 96 Cal.Rptr.2d 485, 999 P.2d 718.

restitution under the UCL. Rather, the Court proposed procedures to be employed by the trial court to secure restitution of any ill-gotten gains by a defendant who had violated the UCL:

the judgment of the trial court for disgorgement of sums collected to secure liquidated damages may be enforced only to the extent that it compels restitution to those former tenants who timely appear to collect restitution. This does not mean, as the dissent asserts, that the defendants may retain the funds improperly taken from their former tenants as liquidated damages. On remand, the trial court should order defendants to identify, locate, and pay each former tenant charged liquidated damages the full amount of funds improperly acquired from that tenant, retaining the power to supervise defendants' efforts, to ensure that all reasonable means are used to comply with the court's directives.

*Kraus*, 23 Cal.4th at 138, 96 Cal.Rptr.2d 485, 999 P.2d 718.

The claim procedure to be used for a representative action under the UCL was further described in footnote 18:

Because an order to disgorge into a fluid recovery fund is not authorized in such representative UCL actions, the trial court may order the defendant to notify the absent persons on whose behalf the action is prosecuted of their right to make a claim for restitution, establish a reasonable time within which such claims must be made to the defendant, and retain jurisdiction to adjudicate any disputes over entitlement to and the amount of restitution to be paid.

*Kraus*, 23 Cal.4th at 138 n. 18, 96 Cal.Rptr.2d 485, 999 P.2d 718.

Moreover, the *Kraus* Court noted that if persons injured by the defendant landlord who were not party to the action sued before the statute of limitations ran, the defendants may introduce evidence of prior payment as a defense to liability and thus need not pay any tenant twice. *Kraus*, 23 Cal.4th at 138, 96 Cal.Rptr.2d 485, 999 P.2d 718.

Taking a closer look at the procedure set forth in *Kraus*, in *Prata* the Court of Appeal stated: "We are confident that the procedures suggested by the Supreme Court in *Kraus* will obviate the due process concerns raised by the court in *Bronco Wine Co. v. Frank A. Logoluso Farms, supra,* 214 Cal. App.3d at page 717, 262 Cal.Rptr. 899 and cited by [the defendant] here." *Prata*, 91 Cal.App.4th at 1142, 111 Cal.Rptr.2d 296.

Consequently, both the *Kraus* and *Prata* Courts have made it clear that any due process concerns alleged by the defendants may be resolved by the exercise of equitable discretion so as to provide for due process protections and allow a representative UCL action to proceed.

In *Cortez*, the companion case to *Kraus*, the defendant employer had altered the work schedule for each member of the uncertified class from five eight-hour days per week to four ten-hour days per week without paying them overtime wages. Each member of the plaintiff class sought to recover back overtime wages for the extra two hours per day, alleging that, by withholding these wages, the defendant employer failed to comply with certain governmental regulations and violated the UCL. *Cortez*, 23 Cal.4th at 169, 96 Cal.Rptr.2d 518, 999 P.2d 706. Consistent with its conclusion in *Kraus*, the Court determined that "an order that a business pay to an employee wages unlawfully withheld is consistent with the legislative intent underlying the authorization in section 17203 for orders necessary to restore to a person in interest money or property acquired by means of an unfair business practice". *Cortez*, 23 Cal.4th at 178, 96 Cal.Rptr.2d 518, 999 P.2d 706.

Similar to the case at bar, in both *Kraus* and *Cortez*, all members of the classes at issue had experienced the same treatment at the hands of the defendants as all other members of the classes. All damages, if not identical, were readily identifiable and easily calculable. As a result of the factual similarities between members of the class, the California Court of Appeal validated the uncertified class actions.

The plaintiffs additionally cite *Scherrer, et al v. Group Voyagers, Inc.*, case # C 99 4834–SI (N.D.Cal.2003), an unpublished order from the Northern District of California.

Stokes and Greendyke maintain that *Scherrer* involved similar claims for failure to pay overtime against other tour operators. There, the Court denied a motion containing all of the defendants' current arguments citing protections the Court can implement for defendants in such actions. Judge Illston found that while the defendants' argument that a court may decline to entertain a UCL action as a representative suit may be so, the converse is also true. In *Scherrer*, the Court, relying on footnote 18 in *Kraus* and the confidence the Court in *Prata* placed thereupon, asserted that the Court can take steps to establish protections for the defendants. Stokes and Greendyke argue that the same result should obtain here.

In the present case, the defendants' due process interests may not be impaired by being subject to suit under the UCL. Over time, the *Bronco Wine* decision has been criticized as suffering "from many problems that make it a poor, if not wholly inaccurate, statement of California law." *In re First Alliance Mortg. Co.*, 269 B.R. 428, 440 (C.D.Cal., 2001). Furthermore, if found liable, the Court could order the defendants to identify, locate, determine the amount owed, and pay each person owed overtime, "retaining the power to supervise defendants' efforts, to ensure that all reasonable means are used to comply with the court's directives." *Kraus*, 23 Cal.4th at 138, 96 Cal.Rptr.2d 485, 999 P.2d 718.

### IV. Conclusion and Order

The section 17200 cause of action contained in Count III of the First Amended Complaint clearly states a claim upon which relief may be granted. In so holding, the Court does not decide whether or not it shall permit the claim to proceed as a representative suit. The fact that the Court has, as stated in the *Kraus* opinion, the discretion to allow the claim to proceed as a representative suit or not does not mean that plaintiffs who seek to bring a section 17200 claim as a representative suit have failed to state a claim at all. The Court will be determining whether a class should be certified under the California Labor Code claim (Count II) and whether the FLSA claim (Count I) will be permitted to proceed as a collective action under Title

29 U.S.C. § 216(b). In the course of presiding over the litigation of those issues, the Court will gain the knowledge of the factors which will inform its future decision as to whether or not to allow the section 17200 claim to proceed as a representative action.