In re FIRST ALLIANCE MORTGAGE COMPANY, a California corporation; First Alliance Corporation, a Delaware corporation; First Alliance Mortgage Company, a Minnesota corporation, and First Alliance Portfolio Services, a Nevada Corporation Debtors.

AARP f/k/a American Association of Retired Persons, Velda Durney, Lucrecia Wilder, Mary Ryan, Ida Mae Forrest, Carol Henry Hong, Jacqueline Bowser, Ireene Huston, Frank G. Aiello, Nicolena Aiello, Paul Carabetta, Lenore Carabetta, Vito Cicci, Stella Cicci, Veronica Maines, Thaddeus Zychlinski, and Marissa Zychlinski, Consolidated Appellants,

v.

First Alliance Mortgage Company et al., Appellees.

Nos. SA CV 01–541 DOC, SA CV 01–542 DOC, SA CV 01–562 DOC. Bankruptcy Nos. SA 00–12370 LR, SA 00–12371 LR, SA 00–12372 LR, SA 00–12373 LR. Adversary Nos. SA 00–1343 LR, SA 00–1456 LR.

United States District Court, C.D. California.

Sept. 24, 2001.

Larry W. Gabriel, Mona S. Amer, Pachulski Stang Ziehl Young & Jones, Los Angeles, CA, David Gould, Robert Espensen Kohn, Francisca Minghao Mok, McDermott Will & Emery, Los Angeles, CA, Sheila Canavan, Phillip M. Steinbock, Steinbock & Hofmann, San Jose, CA, for American Association of Retired Persons.

Larry W. Gabriel, Mona S. Amer, Pachulski Stang Ziehl Young & Jones, Los Angeles, CA, Sheila Canavan, Phillip M. Steinbock, Steinbock & Hofmann, San Jose, CA, for Velda Durney.

Sheila Canavan, Phillip M. Steinbock, Steinbock & Hofmann, San Jose, CA, for Mary Ryan, Lucrecia Wilder, Carol Hong, Henry Hong, Ida Mae Forrest.

Evan C. Borges, William N. Lobel, Jeffrey M. Reisner, Irell & Manella, Newport Beach, CA, for First Alliance Mortgage Company, a California Corporation, First

Alliance Corporation, a Delaware Corporation, First Alliance Mortgage Company, a Minnesota Corporation, and First Alliance Portfolio Services, a Nevada Corporation.

### *ORDER*

CARTER, District Judge.

Appellants Velda Durney, Lucrecia Wilder, Mary Ryan, Ida Mae Forrest, Carol Hong, and Henry Hong (the California Six)[1] and AARP appeal from the order of the Bankruptcy Court sustaining the objection by related debtors First Alliance Mortgage Company[2], First Alliance Corporation, and First Alliance Portfolio Services (collectively First Alliance)[3] to their proofs of claim as private attorney generals under California's Unfair Competition Law, Cal Bus. & Profs. Code § 17200 (the UCL Actions).

Appellants Jacqueline Bowser and Irene Huston (together the Bowser Claimants) and Frank G. Aiello, Nicolena Aiello, Paul Carabetta, Lenore Carabetta, Vito Cicci, Stella Cicci, Veronica Maines, Thaddeus Zychlinski, and Marissa Zychlinski (collectively the Aiello Claimants) appeal from the order of the Bankruptcy Court sustaining the objection by First Alliance Mortgage to their class proofs of claim and denying their motion for class certification.

The AARP and the California Six (collectively the UCL Claimants) appealed separately. The Bowser Claimants and the Aiello Claimants (collectively the Class Claimants) appealed jointly. This Court consolidated each of those appeals. Based on the briefs submitted, and on oral argument on September 10,2001, and for the reasons set forth below, the Court RE-

---

1. Three of the California Six have passed away since this action was first commenced.

2. Two separate entities in this litigation are named First Alliance Mortgage Company. One is a California Corporation, the other a Minnesota Corporation. As indicated by their names and the joint administration of these cases, both entities are substantially related.

3. The parties sometimes refer to First Alliance as "FAMCO."

VERSES the order of the Bankruptcy Court.

## I.

## BACKGROUND

First Alliance has been in the business of subprime mortgage lending since 1971. First Alliance's customers generally were borrowers who would have had difficulty obtaining loans from conventional sources because of poor credit ratings or insufficient credit histories. The loans, many of which were refinancings by homeowners who had developed significant equity in their homes, typically were secured by the borrowers' first mortgages. As of 1999, First Alliance or affiliated entities were licensed to operate in eighteen states and the District of Columbia and serviced nearly $900 million in loans.

On March 23, 2000, First Alliance filed a voluntary petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330, because of the costs associated with the growing number of lawsuits filed against it. This petition triggered the consolidation of most of the pending lawsuits into the bankruptcy proceeding.

To this Court's knowledge, all private lawsuits brought by individuals against First Alliance concerning its lending practices are now under the umbrella of the bankruptcy proceeding. The consolidation also included claims of various governmental units. Six states and the Federal Trade Commission (FTC) filed proofs of claim in the bankruptcy proceeding, asserting violation of consumer protection and lending laws. The FTC also filed a separate action in this Court, alleging violation of federal lending laws. In a separate order, this Court withdrew the reference to the Bankruptcy Court of the governmental proofs of claim and consolidated those proceedings with the FTC's separate action.[4] That case is now vigorously proceeding in this Court.

There are three types of private lawsuits that are proceeding in the bankruptcy case. First, some 2000 individual proofs of claim have been filed by borrowers of First Alliance. This Court has withdrawn the reference to the Bankruptcy Court of those proofs of claim, and consolidated those proceedings with the FTC action. Second, the UCL Claimants have filed representative proofs of claim based on their state unfair competition claims as private attorneys general pursuant to California Business and Professions Code section 17204. Third, a purported class action consisting of borrower plaintiffs was commenced in federal district court in New Jersey. After First Alliance filed for bankruptcy, this group of litigants prosecuted its action in the bankruptcy proceeding.

The UCL Claimants and the Class Claimants proofs of claim are the subject of this appeal. The UCL Actions are addressed in Part II of this order. The Class Actions are addressed in Part III of this order.

## II.

## THE UCL ACTIONS

### A. Background

The UCL Claimants commenced various actions in the California state courts against First Alliance, alleging various unlawful business practices in violation of California's unfair competition law, Cal. Bus. & Prof.Code § 17200 (the UCL). In

---

**4.** Some of those states have also filed separate actions in their own state courts. Efforts are proceeding to bring all governmental actions into the main case pending before this Court, depending on the resolution of certain jurisdictional questions not yet addressed.

addition to claims that the California Six assert as individuals, both the UCL Claimants seek, as private attorneys general, to recover disgorgement on behalf of all First Alliance borrowers nationwide.

After First Alliance filed for bankruptcy, the UCL Claimants filed proofs of claim in the bankruptcy proceeding. From that point on, they litigated their claims against First Alliance in the bankruptcy proceeding.

First Alliance objected to the proofs of claim filed by the UCL Claimants. On March 16, 2001, the Bankruptcy Court announced a tentative ruling and entered a final ruling sustaining those objections on May 9, 2001. The Bankruptcy Court held that under section 501 of the Code, the UCL Claimants, acting as private attorneys general under § 17204, are not authorized to file a proof of claim in the bankruptcy action.[5] The UCL Claimants timely appeal from that order. This Court subsequently withdrew the reference to the Bankruptcy Court of the individual proofs of claim filed by the California Six and consolidated it with the FTC's separate action. The Court denied as moot the motion by the AARP to withdraw the reference.

## B. Discussion

The questions on appeal consist of the three aspects of the Bankruptcy Court's holding: that the UCL Claimants are not creditors under the Bankruptcy Code; that assuming the UCL Claimants could present a representative proof of claim, the only mechanism to do so was as a class action under Federal Rule of Bankruptcy Procedure 7023; and that in an exercise of the Bankruptcy Court's discretion, disallowing the representative claims was a su-

perior method of resolving the bankruptcy proceedings. In order to prevail, the UCL Claimants must show that the Bankruptcy Court erred in all three respects.

### i. Jurisdiction and Standard of Review

This case is an appeal of an order sustaining an objection to a proof of claim. Such an order is a final order, and this Court therefore has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). This is a core matter pursuant to 28 U.S.C. § 157(b)(1)(B).

A district court reviews the Bankruptcy Courts findings with the same standard as the Court of Appeals would review a finding of a district court in general civil matters. 28 U.S.C. § 158(c)(2). As such, this Court reviews the Bankruptcy Court's findings of fact under a clearly erroneous standard and its conclusions of law de novo. *In re Jastrem*, 253 F.3d 438, 440 (9th Cir.2001). The Court reviews the Bankruptcy Court's exercise of equitable powers for abuse of discretion, and will not reverse its decision unless it is "based on an error in law or if the record contains no evidence to rationally support the decision." *In re Conejo Enterprises, Inc.*, 96 F.3d 346, 351 (9th Cir.1996). Thus, whether the UCL Claimants are creditors under the Bankruptcy Code and whether they must present their claims under the class actions procedures of Federal Rule of Bankruptcy Procedure 7023 is reviewed *de novo*. Whether the Bankruptcy Court, exercising its equitable power under California law, properly refused, to permit the UCL actions to proceed without class certification is reviewed for abuse of discretion.

---

**5.** This question is occasionally referred to in the authorities and the briefs here as an issue of standing. It is not, however, to be con-

fused with Constitutional standing under Article III, addressed *infra*.

■ In reviewing bankruptcy cases, a district court is not bound by the prior decisions of the Ninth Circuit's Bankruptcy Appellate Panel, but is free, as an Article III Court, to formulate its own rules within its jurisdiction. *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir.1990).

### ii. Article III Standing and Preservation of Appeal

Before the Court addresses the merits of the question, two preliminary matters must be addressed. First Alliance argues that the UCL Claimants lack standing under the Constitution because they suffered no individual harm. The Court need not decide whether the UCL Claimants would have Article III standing to pursue their private attorneys general actions, because by filing for protection under the Bankruptcy Code, it is First Alliance that seeks the protection of the Federal Court. First Alliance must assert standing. *ASARCO Inc. v. Kadish*, 490 U.S. 605, 618, 109 S.Ct. 2037, 2046, 104 L.Ed.2d 696 (1989) ("Although respondents would not have had standing to commence suit in federal court based on the allegations in the complaint, they are not the party attempting to invoke the federal judicial power.").

Second, First Alliance claims that the UCL Claimants did not argue that they were creditors under the Bankruptcy Code, and thus the issue is not preserved on appeal. The UCL Claimants did argue that their claims were not subject to the class action requirements of Federal Rule of Bankruptcy Procedure 7023, and that they were "reserv[ing] their rights in the bankruptcy case to enforce whatever judg-

ment they may obtain …." They therefore sufficiently preserved the issue.[6]

### iii. The Bankruptcy Court's Order Sustaining First Alliance's Objection to the UCL Claimants Proofs of Claim

### a. Whether the UCL Claimants are Creditors Under the Bankruptcy Code.

Whether a party that asserts a representative claim is a "creditor" under the Bankruptcy Code is the first, and threshold, question. Much of the Bankruptcy Court's analysis was colored by its holding that the UCL Claimants were not creditors.

There is some split of authority as to whether a "representative" claim may proceed in the bankruptcy court, and because the Ninth Circuit has not ruled on the issue, there is no authority binding on this Court. Moreover, neither side points to any reported case where a party acting as a private attorney general under the California Business and Professions Code, or similar state laws, sought to proceed with its claim in the bankruptcy court.

■ The Court's analysis properly begins with the Bankruptcy Code itself. Section 501 of the Bankruptcy Code provides that "[a] creditor or an indenture trustee may file a proof of claim." 11 U.S.C. § 501(a).[7] In order to file a proof of claim, a party must therefore be a "creditor." The Bankruptcy Code defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning

---

6. Moreover, by filing a proof of claim, as only a creditor may, *see* 11 U.S.C. § 501(a), they implicitly asserted that they were creditors.

7. Once filed, a claim is presumptively allowed unless a party in interest (in this case, First

Alliance) objects to the claim. 11 U.S.C. § 502(a). Thus, for purposes of determining whether AARP and the California Six are creditors, the Bankruptcy Code presumes that they will successfully prove their claim.

the debtor." 11 U.S.C. § 101(10). In turn, a "claim" is defined as "a right to payment, whether or not such right is ... fixed [or] contingent ... disputed [or] undisputed ... legal [or] equitable." 11 U.S.C. § 101(5)(A). Congress intended by this language to adopt the broadest available definition of "claim." *Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991) (citing *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 559, 110 S.Ct. 2126, 2131, 109 L.Ed.2d 588 (1990)). The Supreme Court has held that a "right to payment" is "nothing more nor less than an enforceable obligation." *Id.* Whether a right to payment exists in a bankruptcy case is generally determined by reference to state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). The question, therefore, is whether the UCL Claimants have an enforceable obligation under California Law.

■ Despite the Bankruptcy Court's assertion to the contrary, there is no question that a governmental entity may be a creditor on a claim for which members of the public are the beneficiaries. *Nathanson v. NLRB,* 344 U.S. 25, 27, 73 S.Ct. 80, 81, 97 L.Ed. 23 (1952). In *Nathanson,* the National Labor Relations Board filed a proof of claim for back pay owed workers for the debtor's unfair labor practices. The Court held that, even though the money was payable to the employees, the NLRB was a creditor under the Bankruptcy Code.[8] *Id.*

Most courts that have addressed the issue have extended the holding in *Nathanson* to its logical conclusion—that any time a governmental entity has a right of action against a debtor, the governmental entity is a creditor as defined under the

Bankruptcy Code. *E.g., SEC v. Kane (In re Kane),* 212 B.R. 697, 700 (Bankr. D.Mass.1997) (holding that the SEC was a creditor because it had obtained a disgorgement order for of funds the debtor obtained in violation of federal securities laws); *SEC v. Cross (In re Cross),* 218 B.R. 76, 79 (9th Cir. BAP 1998) (same); *Herman v. Egea (In re Egea),* 236 B.R. 734, 746 (Bankr.D.Kan.1999) (holding that the Secretary of Labor was a creditor because it sought restitution of funds that an ERISA plan fiduciary had wrongfully converted); *In re Taibbi,* 213 B.R. 261, 267 (Bankr.E.D.N.Y.1997) (holding that county enforcement agency was a creditor because it had the statutory authority to seek restitution for deceptive trade practices); *Illinois ex rel Ryan v. Volpert (In re Volpert),* 175 B.R. 247, 256 (Bankr.N.D.Ill. 1994) (holding that state secretary of state is a creditor under a restitution order for violation of state securities laws); *Colorado ex rel. Early v. Trujillo (In re Trujillo),* 135 B.R. 674, 675 (Bankr.D.Colo.1992) (holding that district attorney was a creditor under a restitution order for violation of state consumer protection laws); *California v. Taite (In re Taite),* 76 B.R. 764, 771 (Bankr.C.D.Cal.1987) (holding that California Attorney General was a creditor under a restitution order for violation of the California UCL).

The courts have adopted two theories. Some courts have allowed the governmental agencies to bring their claims under the doctrine of *parens patriae. E.g. Trujillo,* 135 B.R. at 675. Other courts, however, have found that the governmental units are creditors because of their statutory authority to enforce the relevant law. *E.g. Egea,* 236 B.R. at 744. In *Egea,* the bankruptcy court focused on the Secretary of

---

**8.** The Court was interpreting the Bankruptcy Act of 1898, as amended, which provided for a narrower definition of the terms creditor and claims than does the modern Bankruptcy Code.

Labor's statutory rights to enforce provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132. Although the Secretary acknowledged that the Labor Department was not itself owed funds, it was still a creditor under the Bankruptcy Code. *Id.* The relevant inquiry, the bankruptcy court held, was not whether an entity was entitled to collect payment, but whether it had the power to enforce such a payment. *Id.*

The split in authority derives from two cases that First Alliance points to, *Missouri v. Cannon (In re Cannon)*, 741 F.2d 1139, 1141–42 (8th Cir.1984) and *Oregon ex rel. Frohnmayer v. Lacy (In re Lacy)*, 74 B.R. 23, 25–26 (Bankr.D.Or.1987). In *Cannon*, the state of Missouri obtained a restitution order in favor of six named individuals for violation of the state Merchandising Practices Act. 741 F.2d at 1140. The Eighth Circuit held that the state attorney general was not a creditor under the Bankruptcy Code because the six named individuals, not the state, had the right to receive the payment. *Id.* at 1141–42. According to the Eighth Circuit, the state had no power to enforce the restitution order. *Id.* Relying on *Cannon*, the bankruptcy court in *Lacy* similarly found that the Oregon attorney general did not have either the statutory authority, or standing as *parens patriae*, to enforce a restitution order pursuant to state racketeering laws. *Lacy*, 74 B.R. at 24.

In this circumstance, the majority rule is the better rule. The Third Circuit aptly summarized the issue in addressing whether a labor union is a creditor under the Bankruptcy Code:

> The debtor urges that while federal common law permits a union to sue to enforce a collective bargaining agreement, that law does not authorize the union to "collect" the wages, but only to cause them to be passed through to its members. That distinction is entirely too metaphysical to serve as a guide for construction of the Bankruptcy Code. *In re Altair Airlines,* 727 F.2d 88, 90 (3d Cir.1984). Indeed, the same distinction was rejected by the Ninth Circuit's Bankruptcy Appellate Panel in *Cross*, 218 B.R. at 79, *rev'g SEC v. Cross (In re Cross)*, 203 B.R. 456 (Bankr.C.D.Cal.1996). In *Cross*, the Panel reversed the bankruptcy court's order holding that the SEC was not a creditor because the underlying funds disgorged were ordered to be paid to a court-appointed receiver and not the SEC. *Id.* The Bankruptcy Appellate Panel held that because the SEC is charged by law with safeguarding the public interest, it held an enforceable obligation against the debtor there. *Id.*

■ This reasoning comports with the Supreme Court's holding in *Nathanson,* 344 U.S. at 27, 73 S.Ct. at 82, where the NLRB was held to be a creditor even though it did not have the power to collect the funds itself. The Supreme Court did not find the distinction significant, and neither does this Court. Once a governmental unit has a right under the relevant law to make a debtor disgorge funds, that unit is a creditor under the Bankruptcy Code.

■ Having established that a governmental unit who, acting on behalf of the general public, can enforce a payment obligation is a creditor as defined by the Bankruptcy Code, the question is whether the same is true of a private party bringing suit under state law on behalf of the general public. A private party cannot rely on the doctrine *parens patriae* as some courts have when dealing with governmental units. The UCL Claimants, however, refer to the statutory authority of the UCL. They note that the same section that authorizes the state attorney general to prosecute a civil action under the UCL confers on private organizations

the power to prosecute an action on behalf of the general public. Cal. Bus. & Prof. Code § 17204.

In *Taite,* 76 B.R. at 771, the bankruptcy court held that the California Attorney General was a creditor under the Bankruptcy Code because it was seeking to enforce a judgment under the UCL. Because courts look to state law to determine whether a right to payment exists, *Butner v. United States,* 440 U.S. at 55, 99 S.Ct. at 918, it would be inconsistent to hold that one person, whose rights derive from the UCL, is a creditor while another person, whose rights derive from the same statute, is not a creditor. The court found such a distinction improper:

> The *identity* of the creditor holding a civil restitution award should not control whether the bankruptcy court is deprived of its exclusive jurisdiction to determine dischargeability of compensatory civil fraud judgments. Such a result would be contrary to one of the major thrusts of the Bankruptcy Reform Act of 1978—to classify *claims,* not creditors.

*Taite,* 76 B.R. at 773 (emphasis in original).

The Court finds the reasoning applicable to governmental units just as applicable to private attorneys general claims under the UCL. In *Nathanson,* the Supreme Court held that the NLRB was a creditor in part because it was "the public agent chosen by Congress to enforce" federal labor laws. 344 U.S. at 27, 73 S.Ct. at 82; *see also Cross,* 218 B.R. at 79 (holding that the SEC is a "statutory guardian charged with safeguarding the public interest"); *Taibbi,* 213 B.R. at 263 ("The Suffolk County Executive's Office of Citizen Affairs is the agency chosen by Suffolk County to investigate instances of

fraud allegedly practiced upon the consumers within its borders."). Just like these agencies, California law has designated private attorney general actions as a crucial means of safeguarding the public interest. The California Supreme Court has stated that:

> representative UCL actions serve important roles in the enforcement of consumers' rights. Class actions and representative UCL actions make it economically feasible to sue when individual claims are too small to justify the expense of litigation and thereby encourage attorneys to undertake private enforcement actions. Through the UCL a plaintiff may obtain restitution and/or injunctive relief against unfair or unlawful practices in order to protect the public and restore to the parties in interest money or property taken by means of unfair competition. These actions supplement the efforts of law enforcement and regulatory agencies. This court has repeatedly recognized the importance of these private enforcement efforts.

*Kraus v. Trinity Mgmt. Servs., Inc.,* 23 Cal.4th 116, 126, 96 Cal.Rptr.2d 485, 492, 999 P.2d 718 (2000). Because the statutory authority and purpose is the same for a private attorney general action as it is for an action brought by the elected attorney general, the result should therefore be the same.

First Alliance contends that the nature of a private action prevents the UCL Claimants from being creditors as defined by the Bankruptcy Court. First Alliance points to the holding in *Kraus,* 23 Cal.4th at 132–38, 96 Cal.Rptr.2d at 496–500, 999 P.2d 718, where the California Supreme Court disallowed a "fluid recovery"[9] in

---

9. A "fluid recovery" requires that the defendants pay over the total amount of funds to be

disgorged to a class fund, from which individ-

private UCL cases. This argument, however, is the same as was rejected in *Altair Airlines*, 727 F.2d at 90 and by this Court, *supra*. So long as the UCL Claimants have a right to enforce a judgment under the state law, they are creditors as defined by the Bankruptcy Code.[10]

### b. Application of the Bankruptcy Rules of Procedure

The Bankruptcy Court also disallowed the UCL Claimants' proofs of claim because they had not complied with the rules of bankruptcy procedure. First Alliance advances two arguments for disallowing the proofs of claim under the Federal Rules of Bankruptcy Procedure. First, they argue that if the UCL Claimants are successful, the necessary "prove-up" of those claims would violate the Bankruptcy Court's Bar Date Order. Second, they argue that the only method for asserting a "representative" claim in the bankruptcy court is through a class action. Fed. R. Bankr.P. 7023; Fed.R.Civ.P. 23. Both of these arguments, however, are based on an assumption that the UCL Claimants are not creditors as defined by the Bankruptcy Code. Because the Court has held the contrary, these arguments are unavailing.

#### 1. Bar Date Order

■ Under the bankruptcy rules, a bankruptcy "court shall fix ... the time within which proofs of claim or interest may be filed." Fed. R. Bankr.P. 3003(c)(3). Pursuant to this rule, the Bankruptcy Court fixed the last date to file proofs of claim at August 16, 2000 (the Bar Date Order). There is no dispute that the UCL claimants timely filed their claim, and an objection to the claim based on timeliness must therefore be overruled. First Alliance's argument is that the individuals to whom restitution may ultimately be paid are the real creditors, and allowing them to make claims after the bar date would violate the Bar Date Order. This argument, however, fails to acknowledge that the UCL Claimants are creditors under the Bankruptcy Code.

■ First Alliance also argues that, if the UCL Claimants are successful, there will need to be a second claims process for the individual borrowers, undermining the purpose behind the Bar Date Order and rule 3003.[11] As noted *supra*, that is not necessarily the case, as a court has broad discretion to fashion an equitable disgorgement remedy, and it need not include a second claim process. Moreover, even if such a process were required, it does not

---

ual claimants then prove their claims and any remainder is distributed by the court. *Id.*

**10.** The UCL Claimants also correctly point out that, although *Kraus* forbids a fluid recovery, it does not necessarily require an individual "prove-up" of claims. A court has broad equitable discretion to determine how to return the disgorged funds. *See id.* at 138 & n. 18, 96 Cal.Rptr.2d at 500, 999 P.2d 718. Even though one possible method includes a claim process similar to that followed in bankruptcy court, that is not the sole method. *Id.* The UCL Claimants suggest that First Alliance could be required to pay the allegedly defrauded borrowers directly, or that a receiver could be appointed to do so. More importantly, even a claim process similar to

the bankruptcy court's proof of claim process would have one major advantage for the borrowers—their claims would not be subject to objection on the merits, thus avoiding the costs and time of litigating their claims.

**11.** This argument is even less compelling in light of the other litigation pending in this matter. The claims of the Federal Trade Commission (FTC) and several states are proceeding in this Court and various state courts. The underlying allegations and the restitution requested are generally the same. Thus, if the FTC or one of the state governments were to prevail, the same claims process that First Alliance asserts would contradict rule 3003 would take place anyway.

undermine the purpose behind rule 3003. As First Alliance points out, the bar date serves the interests of finality and debtor rehabilitation in a bankruptcy proceeding. *In re Tucker,* 174 B.R. 732, 743 (Bankr. N.D.Ill.1994). "If late-filed claims were not barred, it would never be possible to determine with finality what payments are required ...." *Id.* This is not a case where the debtor has fashioned a plan of reorganization based on known claims only to be surprised when a johnny-come-lately creditor asserts a cause of action against the estate, throwing the bankruptcy case into disarray. First Alliance and the other creditors were well aware of the potential liabilities from the UCL Claimants' long-standing litigation. First Alliance did not create a reorganization plan only to be suddenly surprised by a late-filed proof of claim. The bar date serves to "prevent prejudice to timely filing claim holders by preventing late-filed claims from unfairly reducing the *pro rata* dividend of those who did timely file." *Id.* No prejudice occurs here. The other creditors did not have any expectation of funds that the prosecution of the UCL actions has upset. The timely filing of the proofs of claim by the UCL Claimants served notice to the creditors that their take from the estate might be significantly reduced by the $305 million claim of the UCL Claimants.

### 2. Class Action Requirement

█ The Bankruptcy Court held, and First Alliance argues now, that the only manner in which the UCL Claimants could assert their claims was through a class action. Those arguments make sense only if one assumes that the UCL Claimants are not creditors as defined by the Bankruptcy Code. If, as the Court has held, the UCL Claimants are creditors under the Bankruptcy Code, those arguments are quickly rejected. Under the Bankruptcy Code, any creditor may file a proof of claim. 11 U.S.C. § 501(a). As a creditor, the UCL Claimants may file a proof of claim.

A class action is only necessary when an individual who has been allegedly wronged by a defendant seeks to sue on behalf of himself and others similarly situated. Fed.R.Civ.P. 23(a). A class plaintiff must be typical of the members of the class. *Id.* Such is not the case under the UCL, where a plaintiff's rights do not stem from its typicality with other potential defendants, but from the statutory authority granted it to, like the attorney general, enforce the law for the public benefit. Cal. Bus. & Profs. Code § 17204. Thus, while a UCL action may be referred to as "representative," there is but one creditor—the party bringing the action.

First Alliance spends considerable time on an *Erie* analysis, as did the Bankruptcy Court below. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This point needs to be only briefly addressed. First Alliance points out that if there is a conflict between state law and federal procedural rules, the federal rules will generally apply. *Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965). The Court has held that, because the UCL Claimants are creditors in their own right as defined by the Bankruptcy Code, they need not apply for class certification. No conflict therefore exists.

Even were this Court to find that such a conflict existed, it would rule in favor of the UCL Claimants. The Bankruptcy Rules Enabling Act gives the Supreme Court authority to promulgate rules of procedure in the bankruptcy courts, provided that they do not "abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075; *see also* 28 U.S.C. § 2072 (same for Rules of Civil Procedure). Sim-

ply put, applying bankruptcy rule 7023 (which incorporates Federal Rule of Civil Procedure 23) would abridge the AARP's substantive right. There is no question that the AARP would not properly be a named plaintiff in a class action. AARP would then be unable to bring suit.[12] AARP's rights as a creditor, as created under state law and incorporated into the Bankruptcy Code, would be abridged by the bankruptcy rules of procedure. Because Congress specifically prohibited this, applying the rule is improper.

### c. Whether the Bankruptcy Court Abused its Discretion in Preventing the UCL Claimants from proceeding as Private Attorneys General

■ Having established that the UCL Claimants are creditors as defined by the Bankruptcy Code, and that they are not required to follow class action procedures, the remaining question is whether the Bankruptcy Court's abused its discretion by not allowing the claims to proceed as "uncertified representative class actions." The Court finds that the Bankruptcy Court abused its discretion in this matter.

It is important to note that this finding is based on the Court's reading of California law. If the Court agreed with the Bankruptcy Court as to the state of the law, it would find that the Bankruptcy was within its discretion.[13]

First Alliance relies on *Bronco Wine Co. v. Frank A. Logoluso Farms*, 214 Cal. App.3d 699, 720, 262 Cal.Rptr. 899, 911 (1989) to support the Bankruptcy Court's holding that a trial court has discretion to prevent a party from proceeding as an "uncertified class" under the UCL. *Bronco*, however, suffers from many problems that make it a poor, if not wholly inaccurate, statement of California law.

At the outset, the district court of appeals in *Bronco* questions both the wisdom and constitutionality of a private UCL action, putting aside what it considers to be dicta from the California Supreme Court stating that it is permissible to maintain such an action. *Id.* at 719, 262 Cal.Rptr. at 911 (citing *Fletcher v. Sec. Pac., Nat'l Bank*, 23 Cal.3d 442, 454, 153 Cal.Rptr. 28, 35, 591 P.2d 51 (1979)). It then determines that a court can decline to allow such an action to proceed without being first certified as a class action. Its only

---

**12.** This would also create another anomaly, not obvious here because of the large number of plaintiffs involved in this and related matters. If the AARP (or similar public watchdog) were the only party bringing the underlying UCL actions, a petition for relief under the Bankruptcy Code would automatically stay the pending actions. 11 U.S.C. § 362. Then, by preventing the AARP from filing a proof of claim, a debtor could avoid liability for those claims altogether. This would violate the "fundamental tenet that the bankruptcy court is not to be used as a 'haven for wrongdoers'" *Taibbi*, 213 B.R. at 268. First Alliance argues in response that "if a creditor genuinely believes that a bankruptcy was filed in bad faith solely to avoid this type of private attorney general claim, the plaintiff can move to dismiss the bankruptcy." This argument is circular. If the Court were to determine that a private attorney general is not a creditor,

then it would not have standing as a party in interest to bring such a motion. Moreover, a debtor who took advantage of that decision would not be acting in bad faith, but merely taking advantage of the loophole created by the courts.

**13.** That this Court would make a different decision in the exercise of its own discretion, based on the commonality of the claims and the interests in efficiently litigating all the underlying claims, is of no moment for the purposes of an appeal. The Court notes, however, that since the Bankruptcy Court ruled, all the proofs of claim related to First Alliance's lending practices have been withdrawn to this Court. As such, how this Court would exercise its discretion is relevant now that the reference has been withdrawn.

authority for this holding is that the facts were distinguishable from those of another district court of appeal decision. *Id.* (citing *Dean Witter Reynolds, Inc. v. Superior Court (Abascal)*, 211 Cal.App.3d 758, 259 Cal.Rptr. 789 (1989)).

The court in *Bronco* also appears to misapprehend the procedural posture of *Fletcher. Fletcher* addressed the issue of whether the trial court abused its discretion in determining that a class action should be maintained. 23 Cal.3d at 446, 153 Cal.Rptr. at 30, 591 P.2d 51. The court in *Bronco*, however, quotes the California Supreme Court's statement that "[a]lthough an individual [representative UCL] action may ... be a preferable procedure to a class action the trial court may conclude that the adequacy of representation of all allegedly injured borrowers would best be assured if the case proceeded as a class action." *Id.* at 454, 153 Cal.Rptr. at 35, 591 P.2d 51. The *Bronco* court reads this as holding that a trial court has discretion to decide if a case should proceed as a private attorney general action or as a class action. This reading is incorrect. The statement in *Fletcher* stands for the rather unremarkable position that a trial court "has broad discretion in deciding whether to allow maintenance of a class action." 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1785, at 119 (2d ed.1986).

■ Finally, the *Bronco* court's reference of a UCL action as an "uncertified class" action is a misnomer. A class action requires that the named plaintiff "be a member of the class he claims to represent." 4 B.E. Witkin, California Procedure, Pleading § 264, at 339 (4th ed.1997). That is not required under the California statute, which allows "any person acting for the interests of itself, its members, or the general public" to bring suit. Cal.

Bus. & Profs. Code § 17204. Thus, an individual bringing the action need not have any personal interest in the litigation, in contrast to the requirements of a class action. Because a UCL action has different requirements from a class action, requiring it to meet the "similar claims" requirement of a class action is inconsistent.

The California statute creates a private enforcement scheme designed for speed and administrative simplicity. *Bank of the West v. Superior Court (Indus. Indem. Co.)*, 2 Cal.4th 1254, 1267, 10 Cal.Rptr.2d 538, 546, 833 P.2d 545 (1992). Because of the flaws in *Bronco*, the enforcement structure embodied in the statute, and the purpose of the legislative scheme, the Court is "convinced by other persuasive data that the highest court of the state would decide otherwise" and find that there is no "similar claims" requirement for a UCL action. *Ins. Co. of State of Pennsylvania v. Associated Int'l Ins. Co.*, 922 F.2d 516, 520 (9th Cir.1990). To the extent the Bankruptcy Court found otherwise, it was error.

The only support for the proposition that a trial court has discretion to prevent a § 17204 action from proceeding derives from the California Supreme Court's dicta that "in any case which a defendant can demonstrate a potential for harm or show that the action is not one brought by a competent plaintiff for the benefit of the public, the court may decline to entertain the action ...." *Kraus*, 23 Cal.4th at 138, 96 Cal.Rptr.2d at 501, 999 P.2d 718. An incompetent plaintiff would be one that is not defined under the statute. *See* Cal Bus. & Prof.Code § 17204. The harm that the California Supreme Court was concerned with was the potential of subjecting defendants to "multiple suits and duplicative liability." *Kraus*, 23 Cal.4th at 138, 96 Cal.Rptr.2d at 501, 999 P.2d 718. Thus, if

a trial court has any discretion, it is to act to avoid prevent beneficiaries of a UCL action from collecting restitution in one case and subsequently bringing an individualized suit to collect on those same claims. *See id.* ("[I]t may be appropriate for the court to condition payment of restitution to beneficiaries of a representative UCL action on execution of acknowledgment that the payment is in full settlement of claims against the defendant."). No such problem presents itself here. The combination of the Bar Date Order and the discharge to be afforded debtor in a bankruptcy proceeding guarantees that no other claims can be brought against First Alliance for the practices that the UCL Claimants allege.

Much of the oral argument on this appeal was devoted to the purposes and limits of the Bankruptcy Court's discretion. Counsel for First Alliance advanced the argument that the Bankruptcy Court's decisions, with respect to both the UCL and Class Claimants, were designed to avoid the duplicative claims against First Alliance, and therefore reduce the depletion of the estate's resources. There is, however, nothing in the record to suggest that the Bankruptcy Court's decision was based on this broad understanding of the aggregation of actions against First Alliance. The Bankruptcy Court's decision, as indicated in its oral opinions, were based on its findings that bankruptcy procedure was both legally and practically equal to a UCL action. Because the Court holds that it is not, the Bankruptcy Court must be reversed.[14]

### C. Conclusion

Accordingly, the Bankruptcy Court erred sustaining First Alliance's objections to the UCL Claimants' proofs of claim.

### III.

### THE CLASS ACTIONS

### A. Background

Prior to First Alliance's petition for Bankruptcy, the Class Claimants here were pursuing class actions against First Alliance in the federal district court in New Jersey. On May 1, 2000, after First Alliance had commenced its bankruptcy proceedings, the Bowser Claimants filed a class action adversary complaint in the Bankruptcy Court, on behalf of a nationwide class of First Alliance borrowers. The Bowser Claimants thereafter filed their individual and class proofs of claim. The Bowser claimants complaint and proof of claim alleged that First Alliance was guilty of fraud under California Law and violations of the Federal Truth in Lending and Home Ownership and Equity Protection Acts in connection with their lending practices. On June 23, 2000, the Aiello Claimants filed a similar complaint, and shortly thereafter filed individual and class proofs of claim.

Pursuant to the Bankruptcy Court's orders, all First Alliance Borrowers received three notices regarding First Alliance's bankruptcy. The first notice informed borrowers that Bankruptcy Court had authorized limited notice, and that if an individual wanted to be informed of the filings in the case, they would have to file a

---

**14.** It is worth noting that, while counsel ably advanced the point, prohibiting the UCL Actions does not necessarily advance the litigation or reduce the expense to the estate. As all sides have pointed out, the UCL Claimants are both most familiar with the case and have access to more relevant documents. As all parties have expressed a desire for an expeditious trial and resolution of this case, the inclusion of the parties who are most prepared, and their willingness to share information, will make that aggressive schedule possible.

request for special notice. The second notice informed borrowers that they were required to file a proof of claim prior to the bar date that the Bankruptcy Court had set if they wanted to assert any rights against First Alliance. This notice appears to be a rather typical notice in Chapter 11 bankruptcy proceedings. The third notice, however, was prepared in consultation with the Official Joint Borrowers Committee, and attempted to explain to First Alliance Borrowers that if they believed that First Alliance had acted improperly in the course of their loans, then they could, and must, pursue their claims in the Bankruptcy Court. The notice included the new bar date of August 16, 2000, and an "800" telephone "hotline" that borrowers could call, staffed by counsel from the Borrowers Committee.

In addition to this notice, some state governmental offices sent additional notices to borrowers in their state. Notices were also published in the widely-read national newspaper *The Wall Street Journal.*

On December 8, 2000, First Alliance objected to the Class Claimants proofs of claim. On January 8, 2001, the Class Claimants filed their motion for class certification pursuant to Federal Rule of Bankruptcy Procedure 7023. On February 15, 2001, the Bankruptcy Court sustained First Alliance's objections and denied the Class Claimants motion for class certification. The Class Claimant's timely appealed. Subsequent to that ruling, this Court withdrew the reference to the Bankruptcy Court of approximately 2000 individual proofs of claim that would make up part of the putative class.

## B. Discussion

The Bankruptcy Court's order sustaining the objection to the class proofs of claim and denying class certification were both premised on the same reasoning. Therefore, the relevant questions are whether the Bankruptcy Court abused its discretion under Federal Rule of Bankruptcy Procedure 9014 in declining to apply the class action procedures of Federal Rule of Bankruptcy Procedure 7023 (incorporating Federal Rule of Civil Procedure) and whether the Bankruptcy Court abused its discretion in denying the motion for class certification.

### i. Jurisdiction and Standard of Review

For the reasons set forth in Part II.B.i of this Order, *supra*, this Court has jurisdiction of this appeal. the Court reviews the Bankruptcy Court's orders for abuse of discretion. *See Knight v. Kenai Peninsula Borough School Dist.*, 131 F.3d 807, 816 (9th Cir.1997) (denial of class certification is reviewed for abuse of discretion); *Reid v. White Motor Corp.*, 886 F.2d 1462, 1469–70 (6th Cir.1989) (decision whether to invoke Rule 7023 is reviewed for abuse of discretion).

### ii. The Bankruptcy Court's Decision to Not Invoke Rule 7023

In the proceedings below, the major thrust of the Bankruptcy Court's order was based on its decision that invoking Rule 7023 was not proper under the circumstances of this case.[15] In discussing the authorities and commentators on the

---

**15.** At oral argument, First Alliance suggested that the rule in California was that a UCL action must proceed as either a representative action or a class action, not both. It therefore argued that the Court should not allow both to proceed. This was, quite obviously, not the Bankruptcy Court's position, as it allowed neither to go forward. The Court holds that this is not the rule, as there would be nothing to prevent two separate litigations outside a bankruptcy proceeding.

issue, the Bankruptcy Court analyzed the discussion from two leading academic works on the subject of class certification in bankruptcy courts. *See* Luis Kaye, Note, The Case Against Class Proofs of Claim in Bankruptcy, 66 N.Y.U. L.Rev. 897 (1991); Joel Rothstein Wolfson, Class Actions in Bankruptcy: A Clash of Policies Reconciled, 5 Bankr.Dev. J. 391 (1988). The Bankruptcy Court notes that Kaye had found class actions "simply irreconcilable" with bankruptcy proceedings, while "Wolfson is more tolerant" of the procedure. Tr. of Bankr. Ct. Order at 21. From these and other authorities, the Bankruptcy Court determined that class actions were disfavored in bankruptcy proceedings, and should only be undertaken where the claimants had received little or no actual notice of the proceedings or where a class had already been certified. The Bankruptcy Court determined that the borrowers had sufficient notice in this case. *Id.* at 28.

The Bankruptcy Court also discussed at length the policy reasons underlying the Bankruptcy Code, and that there need not be a class action device on top of the bankruptcy procedures. The Bankruptcy Court found that the deterrent effects of class litigation were not present in a liquidation proceeding. *Id.* at 51. The Bankruptcy Court noted the relative ease and inexpensiveness of filing an individual proof of claim. *Id.* at 41. Additionally, the Bankruptcy Court found that allowing the class proofs of claim to go forward would have the effect of allowing the class members who did not file a claim to have a stake in the bankruptcy estate, while the other creditors would have their shares reduced. *Id.* at 33. Finally, the Bankruptcy Court implied that the 2000 individual proofs of claim could be litigated through certification of a class of claimants that have filed individual proofs of claim. *Id.* at 39.

 Although, thorough and well-reasoned, the Court finds that the Bankruptcy Court's decision was error. The Ninth Circuit has held that the Bankruptcy Code allows class proofs of claim. *In re Birting Fisheries, Inc.,* 92 F.3d 939, 940 (9th Cir. 1996). In *Birting Fisheries,* the Ninth Circuit's short opinion references the three other circuits that had made similar findings, and states that it concurs with those decisions. *Id.* (citing *Reid v. White Motor Corp.,* 886 F.2d 1462 (6th Cir.1989); *In re Charter Co.,* 876 F.2d 866 (11th Cir.1989); *In re American Reserve Corp.,* 840 F.2d 487 (7th Cir.1988)). Those cases reject the reasoning of the Bankruptcy Court.

The first flaw in the Bankruptcy Court's decision was its view that class actions were disfavored in Bankruptcy proceedings. The Eleventh Circuit's decision in *Charter Co.,* 876 F.2d at 871 is instructive. In *Charter Co.,* a putative class sued Charter Co. and its officers and directors for violation of securities law in federal district court. *Id.* at 867. Within days of that action, Charter Co. filed for bankruptcy, and the proceedings related to the debtors were stayed, although the action proceeded against the officers and directors. *Id.* The putative class plaintiffs filed a class proof of claim in the bankruptcy proceedings before the claims bar date. *Id.* Nearly two years later, the district court certified a class in the action against the officers and directors. *Id.* at 869. Subsequently, Charter Co. objected to the class proof of claim filed in the bankruptcy court. *Id.* The bankruptcy court sustained the objection, determining that class proofs of claim were not allowed. *Id.* The Eleventh Circuit reversed that ruling. *Id.* at 876.

The Eleventh Circuit found that class actions were "consistent with the goals of the bankruptcy statute." *Id.* at 871.

Finding that "[p]ersons holding small claims, who absent class procedures might not prosecute them, are no less creditors under the [Bankruptcy] Code ..." the Eleventh Circuit held that class procedures will "bring all claims forward, as contemplated by the Bankruptcy Code." *Id.* at 871. Contrary to the Bankruptcy Court's decision, the Eleventh Circuit's analysis held that "application of a class filing procedure would be particularly appropriate to vindicate the purpose of the bankruptcy statute." *Id.* at 872.

The Seventh Circuit's decision in *American Reserve,* 840 F.2d at 489, is also helpful. There, a putative class sued American Reserve in state court for insurance fraud. *Id.* at 488. Before the class was certified, the state insurance department declared American Reserve insolvent, and American Reserve filed for bankruptcy. *Id.* The bankruptcy court overruled the objections of the trustee to the class proof of claim, and the Seventh Circuit ultimately found that a class proof of claim was allowable. *Id.*

The Seventh Circuit noted the four major advantages of a class action; concentration of claims in a single forum, aggregation of small claims, compensation of victims, and deterrence to wrongdoers. *Id.* at 489. Although finding that concentration was not necessary, because the bankruptcy is a "mandatory collective proceeding," the Seventh Circuit found that the purposes of aggregation, compensa-

tion, and deterrence were still relevant. *Id.*

 Once it is clear that class action devices are not disfavored, but are actually "particularly appropriate," in bankruptcy proceedings, the analysis necessarily focuses on the individual circumstances of the case, with the party opposing the use of class devices bearing the burden. The Bankruptcy Court below, as First Alliance does on appeal, gives several explanations for not applying the class action procedures. These reasons, however, repeat the justifications rejected in both *Charter Co.* and *American Reserve.*

 The Bankruptcy Court found that class actions should be used only where the individual class members were not given notice of the bankruptcy proceedings. The decision in *Charter Co.,* 876 F.2d at 868, seems to preclude that determination. There, the Eleventh Circuit sanctioned the use of class procedures in bankruptcy proceedings even though the putative class members presumably received notice of the bankruptcy proceeding. *Id.*[16]

 *Charter Co.* similarly dispels the notion that class procedures should only be used where a class was certified in a non-bankruptcy context. There, the class in the underlying litigation was not certified before the debtor filed its petition. *Id.*

*American Reserve* undermines the Bankruptcy Court's finding that class actions are unnecessary because of collective nature of bankruptcy proceedings. The

---

**16.** The decision in *American Reserve,* 840 F.2d at 494, may also preclude such a determination. The Bankruptcy Court, relying on the opinion *In re Jamesway Corp.,* Nos. 95 B 44821(JLG), 96/8389A, 1997 WL 327105 (Bankr.S.D.N.Y. June 12, 1997) suggests that the class claimants in *American Reserve* did not receive notice. Tr. of Bankr. Ct. Order at 23. It is not clear that is an accurate reading of the history of *American Reserve.* In *Ameri-*

*can Reserve,* the Seventh Circuit suggested that a class procedure might be necessary if the trustee were to send "a notice informing [the putative class members] of the bankruptcy *and the case the [named plaintiffs] filed in state court.*" 840 F.2d at 494 (emphasis added). There is nothing that suggests that a notice of the claims bar date was not sent to class members as is required by bankruptcy procedures. *See* Fed. R. Bankr.P.2002(a)(7).

Seventh Circuit found that, within or outside bankruptcy, small claims holders would likely be unable to pursue their claims. 840 F.2d at 489. Thus, by aggregating the claims, small claims holders can pursue their claims collectively. *Id.* Furthermore, while the Bankruptcy Court below did not find deterrence to be an important factor in this case because the debtors were insolvent, the Seventh Circuit found that deterrence was still an important goal in insolvency cases. *Id.* The Seventh Circuit suggested that the deterrent effect may be lessened where there are no assets and the shareholders will not receive any distribution from the estate. *Id.* at 491. That is not the case here. The result of this litigation will determine whether there is significant value for distribution to the shareholders or nothing at all.

The Seventh Circuit rejected the argument, advanced by the Bankruptcy Court, that the low cost of filing a proof of claim obviated the need for class procedures. "Even though there is no fee to file claims in bankruptcy, the opportunity costs of the time needed to investigate and decide whether to file may be substantial, especially because Bankruptcy Rule 9011(a) ... requires every claimant to investigate the facts and do necessary legal research before filing." *American Reserve*, 840 F.2d at 489.

*American Reserve* also rejects the notion that allowing class members that did not file individual proofs of claim would unfairly reduce the share that creditors who did file proofs of claim. 840 F.2d at 489. "[O]ther creditors have no right to the higher share of the debtor's assets they achieve by excluding rival creditors at the threshold." *Id.; see also Id.* at n. 3. The Seventh Circuit's own words on this matter require little alteration to be relevant to this point.

If on the day before filing its petition American Reserve [or First Alliance] had, say, $10 million in assets and was facing a class suit in state [or district] court with a probable value of $2 million, its other creditors' interests were worth $8 million. They should receive that payoff in bankruptcy. That most policyholders [or borrowers] would not learn of the bankruptcy and the need to file proof-of-claim forms is not a good reason why the other creditors should receive $10 million in the bankruptcy.

*Id.* at 492.

This argument also suffers from the advantage of hindsight. Although First Alliance argues that allowing a class action now, after numerous notices of the claims bar date, would not only be unfair, but prove a waste of the funds spend to send notice to borrowers in the first place, such costs did not exist when the Class Claimants first asked that their adversary proceeding be certified as a class action. Thus, if the Bankruptcy Court had granted class certification at that time, none of the costs that First Alliance complains of would have been incurred. Because the relevant time for the Court's review is when Class Claimants first filed for certification, and not after the notices had been sent out, the fact that there are lost costs is not relevant to the Court's inquiry.

Finally, the Bankruptcy Court's suggestion that the claims of the 2000 borrowers who filed individual proofs of claim could proceed as a class was characterized by the Eleventh Circuit as "illogical and contrary to the important class action policy considerations ... it ignores the goal of permitting the prosecution of small claims which would not be economical to prosecute individually." *Charter Co.*, 876 F.2d at 871.

The Bankruptcy Court's decision not to apply the class action procedures pre-

scribed by Federal Rule of Bankruptcy Procedure 7023 was based on its erroneous finding that class procedures were disfavored. Because its reasons for not applying class procedures were contrary to the holdings of the Seventh and Eleventh Circuits, expressly adopted by the Ninth Circuit in *Birting Fisheries*, 92 F.3d at 940, the Court finds that the Bankruptcy Court's decision was based on an error of law and was therefore an abuse of discretion.

### iii. Certification of Class Under Rule 7023 and Federal Rule of Civil Procedure 23

#### a. Prerequisite Requirements

■ Having found that Federal Rule 7023 should be applied, the Court turns to whether the proposed class is maintainable. There are four threshold questions for class certification—numerosity, commonality, typicality, representation. *See* Fed. R. Bankr.P. 7023 (incorporating Fed. R.Civ.P. 23(a)). There is no dispute as to numerosity or typicality.

The Bankruptcy Court found that there the claims did not meet the commonality requirement because the claims require a showing of reliance and there are differences in state law that prevent commonality. Tr. of Bankr. Ct. Order at 53–54. The Bankruptcy Court found that the typicality requirement was not met for the same reasons. *Id.* at 55. The Bankruptcy Court stated that "there is insufficient evidence before the Court to support a finding that common issues of law and fact predominate ...." *Id.*

■ At the outset, the Bankruptcy Court erred by applying the wrong stan-dard. Common issues of law and fact need only predominate for certain types of class actions. *See* Fed.R.Civ.P. 23(b)(3). Class Claimants seek to certify their claims as limited fund claims under Rule 23(b)(1)(B). Common issues need not "predominate," but there need be only a single issue common to the class members. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998).

■ First Alliance's argument that there are no common issues rests on two assertions, both of which are unpersuasive. First, it argues that reliance is a key component to the Class Claimants fraud case. Here, however, the Class Claimants allege that First Alliance used "sales tracks" to misrepresent the loans. These tracks were allegedly uniform throughout the company. The Ninth Circuit has allowed class certification on where there is uniform misrepresentations through standardized sales pitches. *Grainger v. State Sec. Life Ins. Co.*, 547 F.2d 303, 307 (1977). Although First Alliance argues that there were many variations of these tracks,[17] the key issue is whether the sales pitches varied in any material way. *Id.* Although there may be variations, they do not, at this juncture, appear material.[18] Moreover, it is unclear that the Federal lending laws under which the Class Claimants seek relief requires reliance. Finally, the Class Claimants bring claims under the California Unfair Competition Law which do not require reliance. Cal. Bus. & Profs. Code § 17200.

■ Second, First Alliance argues that there is no commonality because the laws of different states apply. Under California's choice of law principles, which this

---

**17.** Class Claimants characterizes First Alliance's argument as claiming that there is no commonality because it defrauded customers in so many different ways.

**18.** To the extent that the were differences in the "tracks," it may be proper to later certify sub-classes for the purposes of the litigation.

Court must apply, a party seeking to invoke the law of another jurisdiction bears the burden of establishing that the foreign law does apply. *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1187 (9th Cir.2001). First Alliance has not met this burden.

Accordingly, Class Claimants have established the pre-requisites for class certification. Fed.R.Civ.P. 23(a).[19]

### b. Limited Fund Class

Class Claimants assert that this case presents a "limited fund" class. Fed. R.Civ.P. 23(b)(1)(B). The Court agrees. As the Supreme Court restated in *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 834, 119 S.Ct. 2295, 2309, 144 L.Ed.2d 715 (1999), "classic limited fund class actions include claimants to ... company assets in a liquidation sale." (Citations and quotations omitted). This appears to be the case, as the parties have expressed that this is a "liquidation" case, and that, if successful, the money payable to the borrowers will be far more than is available from the estate.

### C. Conclusion

Accordingly, the Bankruptcy Court abused its discretion in sustaining First Alliance's objections to the Class Claimants' proofs of claim and denying class certification.[20]

### IV.

## WITHDRAWAL OF THE REFERENCE

Although the issue is not presented directly on this appeal, the question of withdrawing the reference to the Bankruptcy Court of the UCL Claimants and Class Claimants proofs of claims and adversary complaints is apparent. In its order withdrawing the reference, *FTC v. First Alliance (In re First Alliance),* SA CV 00–1174 DOC (EEx) (C.D. Cal. April 30, 2001) (Slip.Op.), the Court withdrew the reference of the individual claims of the California Six and the 2000 individual claimants that make up part of the putative class here. Although denying AARP's motion, the court specifically noted that it would address those issues if the Bankruptcy Court's decision were reversed on appeal. *Id.* at 438 n. 10. That time is nigh. Accordingly, for the reasons set forth in this Court's order withdrawing the reference, *id.,* the reference to the Bankruptcy Court of the UCL Claimants and Class Claimants proofs of claim and adversary complaints is withdrawn *sua sponte.*

### V.

## CONCLUSION

Accordingly, the order of the Bankruptcy Court sustaining First Alliance's objections to the UCL Claimants proofs of claim is REVERSED. The order of the Bankruptcy Court sustaining First Alliance's objections to the Class Claimants proofs of claim, and denying class certification is

---

**19.** Class Claimants submitted evidence in support of its motion for class certification which the Bankruptcy Court excluded. To the extent that the evidence is relied on by the Court in this Order, the Bankruptcy Court is REVERSED. To the extent that the Court does not rely on that evidence, the Court does not reach the issue.

**20.** The Court notes that its order withdrawing the reference to the Bankruptcy Court is a major change to the procedural posture of this case since the Bankruptcy Court ruled. An exercise of discretion is necessary to the trial court handling the litigation of the case. Therefore, even if this Court did not find that the Bankruptcy Court was in error, it would act in its own discretion in this matter to certify the class.

REVERSED, and the Class Claimants motion for class certification is GRANTED.

The reference to the Bankruptcy Court of the UCL Claimants proofs of claim and the Class Claimants proofs of claim and adversary complaints is WITHDRAWN *sua sponte.* The Court orders that those matters be consolidated with Case No. SA CV 00–964 DOC (EEx).

IT IS SO ORDERED.